**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
:
Y.B., o/b/o S.B., a minor child, *et al.,*        :
:        Case No. 3:18-cv-10950-BRM-DEA
Plaintiffs,        :
:
v.        :
:
:        **OPINION**
HOWELL TOWNSHIP        :
BOARD OF EDUCATION,        :
:
Defendants.        :
_____:

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendant Howell Township Board of Education's ("Howell") Motion for Summary Judgment as to the Complaint of Plaintiffs Y.B. and F.B. on behalf of their minor child S.B. ("Y.B.," "F.B.," or "S.B.," or together "Plaintiffs") and as to Count One of Howell's Counterclaim. (ECF No. 20.) Plaintiffs oppose the Motion. (ECF No. 27.) Howell filed a Reply. (ECF No. 28.) Plaintiffs followed with an unauthorized *sur-reply* (ECF No. 29), as well as letters addressing the facts, substance, and arguments of the Motion that Howell contended were further unauthorized *sur-replies*. (ECF Nos. 33, 36, & Mot. to Strike (ECF No. 30).) Pursuant to this Court's February 11, 2020 Text Order, Howell filed a Supplemental Opposition. (ECF No. 37.) Plaintiffs responded six days later with another unauthorized *sur-reply* (ECF No. 38) and a further letter urging this Court's action in ruling on the Motion in their favor. (ECF No. 39.) Having reviewed the submissions filed in connection with the Motion and having declined to hold oral

argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, Howell's Motion for Summary Judgment is **DENIED**.

## I. PROCEDURAL AND FACTUAL BACKGROUND

This matter arises as an appeal from the Final Decision of Administrative Law Judge Kathleen M. Calemmo ("ALJ" or "Judge Calemmo") issued on April 7, 2018, (*See* Final Decision, Pls.' Ex. A (ECF No. 1-1)) and her denial of a Motion to Reconsider on June 18, 2018, (*See* Order, Pls.' Ex. B (ECF No. 1-2)) in Plaintiffs' action against Howell pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, regarding S.B., the young child of Y.B. and F.B. who requires special education.

### A. Factual History[1]

In 2014, Plaintiffs moved to Lakewood, New Jersey, from Brooklyn, New York. (*Id.* ¶¶ 12, 13.) Y.B. and F.B. requested an individualized education program[2] ("IEP") from the Lakewood Township School District ("Lakewood") in September 2014 because S.B. "is diagnosed with Down syndrome and shows delays in cognitive, social and motor areas." (*See* Lakewood IEP (ECF No. 1-3), Ex. C. at 1, 4.) S.B.'s "significant delays" are categorized as "Intellectual Disability—

---

[1] The following facts are taken from the Plaintiff's Complaint and attached exhibits (ECF No. 1), Howell's Statement of Undisputed Material Facts (ECF No. 20-1), Plaintiff's Response to the Undisputed Material Facts (ECF No. 25), as well as the ALJ's opinions. (ECF Nos. 1-1, 1-2.)

[2] Pursuant to IDEA, an IEP means "a written a written statement for each child with a disability that is developed, reviewed, and revised in accordance with" the IDEA Act. (20 U.S.C. § 1414(d)(1)(A). An IEP contains, in pertinent part, "a statement of the child's present levels of academic achievement and functional performance"; "a statement of measurable annual goals, including academic and functional goals"; "a description of how the child's progress toward meeting the annual goals . . . will be measured and when periodic reports on the progress . . . will be provided"; "an explanation of the extent, if any, to which the child will not participate with nondisabled children" in a regular classroom and activities; "a statement of any individual appropriate accommodations that are necessary"; and "the projected date for the beginning of the services." (*Id.*)

Severe" and thus S.B. is eligible for special education and related services. (ECF No. 1 ¶ 10.) Lakewood provided an IEP, and, as called for by the IEP, S.B. attended the out-of-district School for Children with Hidden Intelligence ("SCHI") at Lakewood's expense pursuant to the IDEA, which provides what is called a free appropriate public education ("FAPE") to disabled children. (*Id.* ¶ 1; *see also* 20 U.S.C. § 1401(9).)

In August 2016, Y.B. and F.B. bought a house in Howell, though they did not move in until the end of November 2016. (*See* Calemmo Decision (ECF No. 1-1) at 4; *see also* ECF No. 1 ¶ 2.) On November 21, 2016, G.B. attended a meeting for an annual review of the Lakewood IEP. (Def.'s Statement of Material Facts (ECF No. 20-1) ¶ 2 (citing Lakewood IEP, Callander Cert. (ECF No. 20-3) ¶ 3, Ex. C (ECF No. 20-6)).) At that meeting were Lakewood Board of Education ("Lakewood Board") staff members that developed the Lakewood IEP for S.B. (ECF No. 20-6.) F.B. consented to continued implementation of the Lakewood IEP before a 15-day notice period expired. (*Id.* (citing ECF No. 20-6).) The Lakewood IEP provided a scheduled implementation date of November 22, 2016. (*Id.* ¶ 4 (citing ECF No. 20-6).) The day after implementation day, Plaintiffs obtained a Transfer Card providing that S.B. would transfer from Lakewood to Howell. (*Id.* ¶ 5.) That card stated that S.B. would leave the Lakewood school district the following day. (*Id.*)

On November 30, 2016, Plaintiffs enrolled S.B. at Howell. (*Id.* ¶ 6 (*see also* ECF No. 20-¶ 3, Student Enrollment Form (ECF No. 20-5) at Ex. B).) As part of the enrollment, Plaintiffs submitted a Domicile form on which Y.B. stated the family had "just moved" to Howell. (*Id.* ¶ 7 (citing ECF No. 20-5).)

On December 1, 2016, Howell's staff met with Plaintiffs at Howell's Memorial Elementary School ("Memorial Elementary"), and members of the Howell Board's IEP Team reviewed the

Lakewood IEP and met S.B at Memorial Elementary. (*Id.* ¶ 10 (*See* Letter from Howell Supervisor of Special Education Susan Spill to Y.B. and F.B. dated December 5, 2016 (ECF No. 20-3 ¶ 3, Ex. D (ECF No. 20-7)).) After considering the capabilities of its special-education program, Howell determined it could provide S.B. with a program comparable to that required by the Lakewood IEP at Memorial Elementary. (*Id.* ¶ 9.) A memorandum from Howell's Child Study Team stated S.B. would receive the following services in a CMI Class at Memorial Elementary: speech therapy three times a week in an individual setting and once a week in a group setting; occupational therapy two times a week in an individual setting and once a week in a group setting; and physical therapy once a week in a group setting. (ALJ's Final Decision (ECF No. 1-1) at 6.)

In anticipation of S.B.'s attendance at Memorial Elementary beginning December 5, 2016, Howell staffers: (i) arranged for the provision of related services for S.B. consistent with the Lakewood IEP and (ii) made arrangements for transportation services for S.B. and his special need for a welcome on the school bus. (*Id.* ¶ 11 (citing ECF No. 20-7).)

S.B. did not attend Memorial Elementary on December 5, 2016 or any day thereafter; instead S.B. continued to attend SCHI.

By letter dated December 5, 2017, Howell Special Education Supervisor Susan Spill advised Plaintiffs: "We welcome [S.B.] as a Howell student. Please know that all arrangements are in place for transportation and special education services." (*Id.* ¶ 13 (citing ECF No. 20-7).) The Spill letter further stated that each day S.B. does not attend Memorial Elementary would be considered an absence. (*Id.*)

After continued absences, on February 3, 2017, Howell terminated S.B.'s enrollment at Memorial Elementary and transmitted a Student Transfer Card for S.B. to SCHI. (*Id.* ¶¶ 15,16 (citing (citing ECF No. 20-7); Attendance Records (ECF No. 20-8), Ex. D).)

On July 18, 2017, Y.B. and F.B. requested that Howell provide independent evaluations of S.B. (ECF No. 1-1 at 5.) Howell did not respond. (*Id.*) By letter dated August 16, 2017, Y.B. and F.B. informed Howell that S.B. would be enrolled at SCHI for the 2017-2018 school year and sought reimbursement for all associated costs of that enrollment. (*Id.* at 6.)

### B.  Procedural History

On July 17, 2017, Y.B. and F.B. requested a due process hearing with the Office of Special Education Programs under the IDEA. (ECF No. 1-1 at 3.) Howell filed an Answer on July 26, 2017. (*Id.*) On August 16, 2017, the matter was transmitted to the New Jersey Office of Administrative Law and assigned to Judge Calemmo. (*Id.* at 1, 4).) On January 9, 2018, Howell filed a motion for summary decision. (*Id.* at 4.) On January 30, 2018, Plaintiffs filed opposition and a cross-motion for summary decision. (*Id.*) Oral argument on the Motions was held on April 17, 2018. (*Id.*) On May 16, 2018, Judge Calemmo issued her Final Decision, ruling that IDEA's "stay put" provision does not apply to the intrastate transfer of S.B. because Howell offered to implement "comparable services" to those described in S.B.'s Lakewood IEP, and Plaintiffs were not then entitled to reimbursement for any costs or other relief associated with the continued placement of S.B. at SCHI. (*Id.* at 11, 14.) That decision also directed Howell to provide independent evaluations that Plaintiffs requested. (*Id.* at 16).)

On May 18, 2018, Plaintiffs moved for Judge Calemmo to reconsider her decision. (*Id.* ¶ 26 (citing ECF No. 1-2, Plaintiffs' Ex. B., Order on Mot. to Reconsider).) After lengthy briefing by the parties, Judge Calemmo ruled she did "not have the authority to hear a motion for reconsideration from a final decision in a special education due process matter brought under IDEA." (*Id.* ¶ 31 (citing ECF Doc. No. 1-2, Ex. B., Reconsideration Order at 2.).) Instead, Judge Calemmo held IDEA's § 1415 as well as 34 C.F.R. 300.514 provide that a decision made in a

special education due process hearing in New Jersey is final, and a final decision is appealable only by the filing of a complaint in either state or federal court in New Jersey. (*Id.* at 2.)

Plaintiffs filed a Complaint in this Court on June 22, 2018, alleging Howell violated 20 U.S.C. § 114(D)(2) and N.J.A.C. 6A:14-3.7. (ECF No. 1 ¶¶ 30-34.) On July 11, 2018, Howell filed a Verified Answer and Counterclaim in which Howell asked this Court to affirm Judge Calemmo's Final Decision that the "stay put" provisions were not applicable to S.B., and to vacate her holding directing Howell to provide independent evaluations of S.B., contending that Plaintiffs never expressed disagreement with the Lakewood IEP. (*Id.* ¶¶ 36-37.) In the alternative, Howell sought to have the matter remanded to the ALJ for a hearing on issues pertaining to the independent evaluations. (*Id.* ¶ 37.)

On July 19, 2018, the Court remanded to the Administrative Law Judge for a hearing and substantive determination on the issue of whether Plaintiffs are entitled to an independent evaluation of S.B. (ECF No. 8.) By letter dated March 13, 2019, the Parties informed the Court that they had resolved the issue of independent evaluations. (ECF No. 11.)

On August 21, 2019, Howell filed this Motion seeking Summary Judgment on Plaintiffs' Complaint alleging Judge Calemmo incorrectly ruled Howell had not violated 20 U.S.C. § 114(D)(2) and N.J.A.C. 6A:14-3.7, and for Summary Judgment on its counterclaim seeking to have Judge Calemmo's Final Decision Affirmed.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary

basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002). "Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3rd Cir. 1991) (citing *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir.), *cert. denied*, 474 U.S. 1010 (1985)); *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party bears the burden of persuasion at trial, summary judgment is appropriate only if the evidence is not susceptible to different interpretations or inferences by the trier of fact. *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex*, 477 U.S. at 330 (Brennan, J.,

dissenting). Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

## III. DECISION

Howell argues Judge Calemmo's decision should be affirmed, and thus its Summary Judgment Motion granted, because the evidence confirms she correctly applied the law surrounding IDEA's "stay-put" provision for the circumstances present here, where the family moved on its own initiative from one New Jersey school district to another. (Def.'s Br. in Sup. of Mot. (ECF No. 20-2) at 1.) Because Judge Calemmo "correctly determined" the "stay put" provisions are not applicable when parents make the decision to move/transfer their child, as did the parents of S.B., Howell contends, the ALJ also was correct to rule Plaintiffs are not entitled to

reimbursement of their costs for ignoring Howell's plan to fulfill the Lakewood IEP at Memorial Elementary and instead having S.B. attend a private school. (*Id.* at 13.)

Howell cites the Third Circuit in *J.F. v. Byram Township Board of Education*, and this Court in *Cinnaminson Twp. Bd. of Ed. v. K.L. o/b/o R.L.* and in *K.G. v. Cinnaminson Twp. Bd. of Ed.* for the proposition that when a student transfers from a prior district under an existing IEP the receiving district's obligation pursuant to the IDEA is to provide comparable services to what the student received from the prior district and that the receiving district has the authority to determine placement pending the dispute. (*Id.* at 15-19 (citing *Byram*, 629 F. App'x 235, 237-238 (3d Cir. 2015); *Cinnaminson v. K.L.*, No. 16-3586, 2016 WL 4212121 *5 (D.N.J. Aug. 9, 2016), and *K.G. v. Cinnaminson*, No. 17-04740, 2018 WL 4489672 (D.N.J. Sept. 19, 2018)).)

Plaintiffs counter that the ALJ's decision should be reversed, and thus Defendant's Motion for Summary Judgment denied, or at least that the matter be remanded to the ALJ for evidentiary hearings, because the "'stay put' provision is 'unequivocal'; it states 'plainly that the child *shall* remain in the then current educational provision.'" (*See* Pls.' Br. in Opp. to Mot. (ECF No. 27) at 5 (citing *Drinker by Drinker v Colonial School District*, 78 F.3d 859, 864 (3d Cir. 1996) (citing *Honig v Doe*, 484 U.S. 305, 323 (1988))).) Plaintiffs argue *Drinker* holds "the purpose of the statute is to ensure that 'all handicapped children, regardless of whether their case is meritorious or not, . . . remain in their current educational placement until the dispute with regard to their placement is ultimately resolved.'" (*Id.* (citing *Drinker*, 78 F.3d at 864).)

Plaintiffs argue the "stay put" applies because the Lakewood IEP calling for S.B.'s attendance at SCHI was the "actual functioning" IEP at the time of S.B.'s relocation to Howell. (*Id.* at 6.) Because the Lakewood IEP was the actual functioning IEP, Howell was obligated to follow that IEP and could not decide to offer "comparable services or a comparable education."

(*Id.*) Simply put, Plaintiffs contend, IDEA's "'stay put' statute does not authorize any consideration of 'comparable services' or a 'comparable education.'" (*Id.*) Plaintiffs argue *Drinker* is the primary authority on this point, while Defendants, and Judge Calemmo, rely on nonprecedential and nonbinding case law. (*Id.*)

Defendant replies that *Drinker* is inapposite because that case involved the parents' fight against their town's school district's placement of their child in a neighboring district and sought instead to maintain the student's placement in their town's own school district. (*See* Def. Reply (ECF No. 28) at 16.) *Drinker* does not apply, Defendant argues, where, as here, the parents unilaterally changed school districts but expected the private-school option to remain unchanged even though the new school district said it could implement the Lakewood IEP in its schools. (*Id.*)

Defendant contends courts have recognized the IDEA is intended to protect disabled students and their parents from a school district's unilateral actions, but where the parents have acted unilaterally, such as by moving from one school district to another, such protection is not needed because, by moving, parents have accepted the risk that there will be changes to the implementation of an IEP. (*Id.*)

Defendant further contends Plaintiffs' reliance on *R.B. v. Mastery Charter School* for the proposition that a school district may not unilaterally change the placement of a child after due process litigation has commenced is inapplicable to the facts of this matter because no due process litigation had been commenced during Howell's attempt to implement the Lakewood IEP. (*Id.* at 17 (citing *R.B. v. Mastery Charter Sch.*, 532 F. App'x 136, 139-42 (3d Cir. 2013).)

Plaintiffs responded to Defendant's Reply with an unauthorized submission labeled "2nd Opposition" and stating that Plaintiffs "vehemently dispute[] much, if not all, of what is alleged" in Defendant's Reply. (Pls.'s 2nd Opposition (ECF No. 29) at 1.) Plaintiffs argued the assertions

contained in Defendant's brief "actually, dictate a fact-finding hearing, something the Administrative Law Judge incorrectly denied." (*Id.*) Plaintiffs also sought to introduce new exhibits: a due process petition the Plaintiffs filed in October 2019 (Ex. A); Plaintiffs' August 2018 request to Howell for an IEP (Ex. B); Plaintiffs' June 2019 request to Howell for an IEP (Ex. C); and the response denying the 2019 request from Howell's then-Assistant Superintendent of Pupil Services. (*Id.* at 2.) Plaintiffs asked the Court to accept its "2nd Opposition" in "furtherance of Petitioners/Plaintiffs request to reverse the Administrative Law Judge's Decision" and order summary judgment for Plaintiffs because of Howell's failure to offer an IEP. (*Id.* at 3.)

Howell responded by filing a Motion to Strike the "2nd Opposition" as an unauthorized *sur-reply* and to strike the proposed exhibits because they were "outside of the record on this appeal from a Final Decision in the Office of Administrative Law pending before this court." (ECF. Doc. Nos. 28, 28-1, 28-2).

After the Motion to Strike was briefed, Plaintiffs again filed a letter to the Court, arguing that the Court needed to act quickly on the Summary Judgment Motion because

> other school districts across the State have now apparently 'adopted' the (frivolous) position herein, to wit, that when a student relocates from another school district that instead of engaging in a collaborative process with the parents, all that they must do is 'adopt' the prior IEP, but for the placement, to wit, instead of continuing the disabled child at a New Jersey Department of Education ("NJDOE") approved out-of-district placement merely state same can be accomplished in District (as Howell Township states herein without any actual basis and/or without an IEP nor IEP Amendment.

(*See* Pls.' January 13, 2020 Letter (ECF No. 33) at 3.) In response, Howell filed a second Motion to Strike, labeling that letter "the most recent sur-reply letter and exhibit that were filed by Plaintiffs without leave of the court." (ECF No. 34.)

By Text Order dated February 11, 2020, the Court denied both Motions to Strike, but provided that "Defendant may submit a supplemental brief on the merits of the summary judgment motion in light of this decision, not more than 15 pages, by February 18, 2020." (*See* 2-11-2020 Text Order.)

Pursuant to that Order, Howell submitted a supplemental brief reiterating its position that the ALJ correctly decided the "stay put" provision did not apply to Plaintiffs' voluntary intrastate transfer of S.B. (*See* Def.'s Supp. Br. in Supp. of Mot. (ECF No. 37) at 5.) Howell contends the fact that Lakewood decided it could not implement the Lakewood IEP in its own schools was not binding on Howell, which, after reviewing the Lakewood IEP, concluded its schools could implement that plan. (*Id.*) Howell then reviewed the same three cases in support of its position: *Byram*, *Cinnaminson v. K.L.* and *D.S. v. Cinnaminson*. (*Id.*)

Plaintiffs filed an unauthorized brief in response, arguing, *inter alia*, that Howell's claim that it could provide equivalent services is irrelevant because the IEP calls for S.B.'s placement at SCHI. (*See* Pls.'s Response in Opposition (ECF No. 38) at 2.) Plaintiff then filed a further letter to the Court arguing that the Court should expedite its decision to correct the "erroneous decision" of Judge Calemmo, in part because Plaintiffs felt that decision was hurting its position in later, related litigation between the parties. (ECF No. 39 at 3-4.) Plaintiffs also sought to introduce further documents relating to events that occurred in 2019-20. (*Id.* at 1-5.) Defendants objected to Plaintiffs' "dripping faucet briefing," arguing that Plaintiffs' "fourth opposition" again sought to introduce documents "outside the record" that was before Judge Calemmo. (ECF No. 40-1 at 2.)

### A.  The 'Stay Put' Provision

Howell argues its Summary Judgment Motion should be granted and Judge Calemmo's decision thereby affirmed because the ALJ correctly decided the "stay put" provision of the IDEA

is inapplicable under the facts of this matter. Plaintiffs contend the "stay put" provision governs this dispute and that Judge Calemmo improperly decided otherwise. The Court disagrees with Plaintiffs and affirms Judge Calemmo's Final Decision on this point.

Once an ALJ makes a determination, any party has the right to appeal such decision in an appropriate state or federal court. *See D.B. v. Ocean Twp. Bd. of Educ.*, 985 F. Supp. 457, 472 (D.N.J. 1997). The reviewing court "shall receive the records of the administrative proceedings; shall hear additional evidence at the request of the party; and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(i)-(iii).

"When deciding an IDEA case, the District Court applies a modified *de novo* review and is required to give due weight to the factual findings of the ALJ." *L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 389 (3d Cir. 2006). Under this standard, the district court's review over questions of law is plenary. *Carlisle Are Sch. v. Scott P. By and Through Bess P.*, 62 F.3d 520, 528, n. 3 (3d Cir. 1995). However, "[f]actual findings from the administrative proceedings are to be considered prima facie correct" and "[i]f a reviewing court fails to adhere to them, it is obliged to explain why." *S.H. v. State-Operated Sch. Dist.*, 336 F.3d 260, 270 (3d Cir. 2003) (citations omitted). The party challenging the ALJ's ruling bears the burden of overcoming the presumption that the ALJ's findings were correct. *Andrew M. v. Delaware Cty. Office of Mental Health & Retardation*, 490 F.3d 337, 345 (3d Cir. 2007).

The IDEA includes strict substantive and procedural requirements for school districts to follow in implementing special-education plans for students with disabilities. The purpose of the IDEA is to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their

unique needs" and to "prepare them for further education, employment, and independent living."

20 U.S.C. § 1400(d)(1)(A). The Supreme Court in 2017 provided a thorough analysis of what is

required of school districts in order to satisfy the substantive, FAPE requirement of IDEA, stating:

> To meet its substantive requirement under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances.
>
> The "reasonably calculated" qualification reflects a recognition that crafting an appropriate program of education requires a prospective judgment by school officials. *Bd. of Educ. of Hendrick Hudson Sch. Dist. v. Rowley*, 458 U.S. 176, 207 (1982). The Act contemplates that this fact-intensive exercise will be informed not only by the expertise of school officials, but also by the input of the child's parents or guardians. *Id.* at 208-09. Any review of an IEP must appreciate that the question is whether the IEP is *reasonable*, not whether the court regards it as ideal. *Id.* at 206-07.
>
> The IEP must aim to enable the child to make progress. After all, the essential function of an IEP is to set out a plan for pursuing academic and functional advancement. *See* 20 U.S.C. §§ 1414(d)(1)(A)(i)(I)-(IV) This reflects the broad purpose of the IDEA, an "ambitious" piece of legislation enacted "in response to Congress' perception that a majority of handicapped children in the United States 'were either totally excluded from schools or [were] sitting idly in regular classrooms awaiting the time when they were old enough to "drop out."'" *Rowley*, 458 U.S. at 179 (quoting H.R. Rep. No. 94-332, p.2 (1975)). A substantive standard not focused on student progress would do little to remedy the pervasive and tragic academic stagnation that prompted Congress to act.
>
> . . .
>
> Progress through this system is what our society generally means by an "education." And access to an "education" is what the IDEA promises. *Rowley*, 458 U.S. at 203. Accordingly, for a child fully integrated in the regular classroom, an IEP typically should, as *Rowley* put it, be "reasonably calculated to enable the child to achieve passing marks and advance from grade to grade." *Id.* at 203-04.
>
> . . .
>
> It cannot be the case that the Act typically aims for grade-level

advancement for children with disabilities who can be educated in the regular classroom, but is satisfied with barely more than *de minimis* progress for those who cannot.

When all is said and done, a student offered an educational program providing "merely more than *de minimis*" progress from year to year can hardly be said to have been offered an education at all.

*Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 999-1001 (2017).

While the IDEA does impose procedural requirements upon school districts as well, the Third Circuit has clarified that "[procedural] compliance is not a goal in itself; rather, compliance with such procedural requirements is important because of the 'requirements' impact on students' and parents' substantive rights." *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 274 (3d Cir. 2012). A procedural violation "is actionable under the IDEA only if it results in a loss of educational opportunity for the student, seriously deprives parents of their participation rights, or causes a deprivation of educational benefits." *Id.* (citing *Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 525-26 (2007)).

In her Final Decision, Judge Calemmo ruled "the safeguard of the 'stay put' provision is not implicated when, as here, the parents made the unilateral decision to transfer their child mid-year to a new school district that offered 'comparable services to those described in the students very current IEP." (ECF No. 1-1 at 11.) After determining the "stay put" provision was not applicable, Judge Calemmo examined 20 U.S.C. § 1414(d)(2)(C), titled "Program for children who transfer school districts," which sets out a school district's obligations in transfer situations, to consider whether Howell met those obligations. Subsection (i)(I) of § 1414(d)(2)(C) states:

In the case of a child with a disability who transfers school districts within the same academic year, who enrolls in a new school, and who had an IEP that was in effect in the same State, the local educational agency shall provide such child with a free appropriate public education, including services comparable to those described in the previously held IEP, in consultation with the parents until

such time as the local educational agency adopts the previously held IEP or develops, adopts, and implements a new IEP that is consistent with Federal and State law.

Judge Calemmo held that with regard to S.B.'s transfer from Lakewood to Howell, and pursuant to § 1414(d)(2)(C)(i)(I), "Howell was required to provide S.B. with a FAPE that included services comparable those described in his Lakewood IEP." (ECF No. 1-1 at 9.) Furthermore, Judge Calemmo ruled, "Howell was also required to act without delay and provide a program comparable to that set forth" in S.B.'s Lakewood IEP. (*Id.*) Addressing Plaintiffs' contention that the "stay put" provision[3] was triggered by their objection to Howell's ability to implement the Lakewood IEP without sending S.B. to SCHI, Judge Calemmo relied on the holding of this Court in *Cinnaminson v. K.L.* that "even where parents are aggrieved under [§ 1414(d)(2)(C)(i)(I)], there is no automatic default remedy to the creation of a 'stay put' placement for a transfer student." (*Id.* at 10 (citing *Cinnaminson v. K.L.,* No. 16-3586, 2016 WL 4212121 *7).)

This Court affirms Judge Calemmo's Final Decision both because it agrees the "stay put" provision is not implicated to protect a student's rights when it is the family that has made the unilateral change in school districts and because a review of the text of the "stay put" provision, § 1415(j), makes clear it is inapplicable to the facts of this matter.

The Court begins with its determination that the canons of statutory interpretation require the conclusion that IDEA's "stay put" provision is inapplicable in this matter, and then it will explore the jurisprudence holding that Plaintiffs' unilateral change in the circumstances underlying S.B.'s education obviate the protections inherent in § 1415(j).

---

[3] In their Brief in Opposition to this Motion, Plaintiffs argue "the ALJ should have applied the so-called 'stay put' provision, *see* 20 U.S.C. § 1415(e)(3), in deciding S.B.'s case." (*See* ECF No. 27 at 3.) The Court observes that, pursuant to changes to the legislation in 2004, subsection (e) now is titled "Mediation." § 1415(e). The Court construes Plaintiffs as referring to the provision at subsection (j), titled: "Maintenance of current educational placement."

### 1. The Text of the 'Stay Put' Provision

The "stay put" provision of the IDEA states, in relevant part:

> Except as provided in subsection (k)(4), during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

(*See* § 1415(j).) The language of the "stay put" statute makes clear § 1415(j) is triggered only by "the pendency of any proceedings conducted pursuant to this section," where "this section" means § 1415. As the Third Circuit stated in *W.B. v. Matula*, the IDEA "mandate[s] that during the pendency of administrative proceedings a 'child shall remain in the then current educational placement.'" 67 F.3d 484, 500 (3d Cir. 1995) (citing 20 U.S.C. § 1415(e)(3)(A), and 34 C.F.R. § 300.513(a)).

However, in this matter there was no "pendency of any proceedings" when Y.B. and F.B. declined to have S.B. attend Memorial Elementary and instead continued S.B.'s enrollment in SCHI. *Michael C. ex rel. Stephen C. v. Radnor Tp. School Dist.*, 202 F.3d 642, 654 (3d Cir. 2000); *see also Verhoeven v. Brunswick Sch. Comm.*, 207 F.3d 1, 6 (1st Cir. 1999) (stay-put provision applies during pendency of "administrative and judicial proceedings challenging a placement decision"); *Kari H. v. Franklin Special Sch. Dist.*, 125 F.3d 855, 1997 WL 468326, at *6 (6th Cir. 1997) (per curiam) (only three types of proceedings arise under § 1415—due process hearings, state administrative review, and civil judicial review actions in state or federal court).

Plaintiffs cite *Drinker* in support of their position that the "stay put" provisions required S.B.'s continued attendance at SCHI and not at Memorial Elementary. However, the Court observes *Drinker* actually supports the proposition that the "stay put" provision operates only

during the pendency of any proceedings. *See Radnor,* 202 F.3d at 654 n.12 (explaining that the *Drinker* Court noted that stay-put provision applied during impartial due process hearing on parents' complaints regarding educational placement of handicapped children, and during state or federal judicial review of final administrative proceedings) (citing *Drinker*, 78 F.3d at 864.)

As to what constitutes a proceeding under § 1415, the Third Circuit in *Radnor* held that the district court was in error when it decided that proceedings as contemplated by § 1415 included the "opportunity of the parent or guardian to inspect relevant records with respect to the child's evaluation, and the notice requirement the school district must satisfy when making the initial placement decision," procedures referred to in § 1415(b). *Radnor*, 202 F.3d at 654. Instead, the *Radnor* Court determined that these examples of procedures referred to in § 1415(b) actually arise under § 1414. *Id.* While the *Radnor* Court did not expressly define "proceedings" as contemplated by § 1415, in finding that no procedures were conducted pursuant to this section, it cited two cases positing the "stay put" provision applies only after the process of administrative review of the placement decision has commenced and remains in effect through the completion of any civil action in state or district court: *Smith v. Roher*, Civ. A. No. 89–3258, 1991 WL 132545, at *1 (D.D.C. July 10, 1991) and *Mrs. C. v. Wheaton*, 916 F.2d 69, 72 (2d Cir. 1990).

In *Roher*, the U.S. District Court for the District of Columbia determined the "stay-put" provision "applies once the administrative review process is commenced and remains in effect through the completion of a civil action in district court."[4] No. 89–3258, 1991 WL 132545, at *1 (D.D.C. 1991). Similarly, the *Wheaton* Court analyzed the procedural ladder set out by § 1415,

---

[4] In a footnote, the Court noted the "stay put" provision does not apply during the appeal of a district court ruling. No. 89–3258, 1991 WL 132545, at *1 n.3 (citing *Andersen v. District of Columbia*, 877 F.2d 1018 (D.C. Cir. 1989)).

observing that in the event of a proposed change in a child's IEP, the parent or guardian must be so notified in writing, § 1415(b)(1)(C), and provided with an opportunity to bring complaints about "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child," § 1415(b)(1)(E), and a parent "then has a right to contest the matter in an impartial due process hearing conducted by the state educational agency," § 1415(b)(2). *Wheaton*, 916 F.2d at 72. During the pendency of these proceedings, the child must be allowed to remain in his current educational placement under the "stay-put" provision of the Act, § 1415(e)(3), unless the parent or guardian otherwise agrees. *Id.* The Court further explained that only when a parent or guardian seeks review of the decision regarding a proposed change does the "stay-put" provision become operative. *Id.* at 73.

This Court observes that subsection (e) to § 1415 is titled "Mediation," subsection (f) is titled "Impartial Due Process Hearing," subsection (g) is titled "Appeal," subsection (i) is titled "Administrative Procedures," and subsection (k) is titled "Placement in alternative Education Setting," however subsection (h)'s procedural safeguards apply only to hearings conducted pursuant to subsections (f) and (g).[5] *See* § 1415. The applicability of hearing safeguards suggests that Impartial Due Process Hearings and Appeals would be considered proceedings as contemplated by § 1415(j), while Mediation, for instance, would not.

It is undisputed Plaintiffs did not request a due process hearing with the Office of Special Education Programs pursuant to the IDEA until July 17, 2017, well after the 2016-17 school year had concluded. (ECF No. 1-1 at 3.) There was, then, no proceeding being conducted when Plaintiffs declined to send S.B. to Memorial Elementary in Howell. Therefore, by the explicit

---

[5] Subsection (k) applies to a school district's process for changing the placement of a student for a violation of a student code of conduct, as so is inapplicable to this matter.

language of § 1415, the "stay put" provision was inapplicable to S.B. in November-December 2016.

### 2. Unilateral Move by Parent(s) of Student

Judge Calemmo concluded the "stay put" provision "was not implicated when, as here, the parents made the unilateral decision to transfer their child mid-year to a new school district that offered 'comparable services' to those described" in the Lakewood IEP. (ECF No. 1-1 at 11.) The foundation for her conclusion here is § 1414(d)(2)(C)(i)(I) and case law centering on a school district's responsibilities toward a transferring student under that IDEA provision

Defendants argue this subpart addressees the question at issue in this litigation, namely whether or not the school district into which a student is transferring may provide "services comparable to those described in the previously held IEP," or whether that school district is bound by the IEP designed by the prior school district.

Howell cites the Third Circuit in *J.F. v. Byram Township Board of Education*, and this Court in *Cinnaminson Twp. Bd. of Ed. v. K.L. o/b/o R.L.* and in *K.G. v. Cinnaminson Twp. Bd. of Ed.* as standing for the proposition that when a student transfers from a prior district under an existing IEP the receiving district's obligation pursuant to the IDEA is to provide comparable services to what the student received from the prior district and that the receiving district has the authority to determine placement pending the dispute. (*Id.* at 15-19 (citing *Byram*, 629 F. App'x 235, 237-38 (3d Cir. 2015); *Cinnaminson v. K.L.*, No. 16-3586, 2016 WL 4212121 at *5, and *K.G. v Cinnaminson*, No. 17-04740, 2018 WL 4489672 at *8).)

Judge Calemmo's decision explored in depth the reasoning of these three decisions in reaching a similar conclusion, that the protections of the "stay put" provision are not necessarily

implicated when it is the unilateral action of the parents, and not the school district, that resulted in changes to implementation of the IEP.

Plaintiffs argue *Drinker* is the primary authority on this point and thus that Judge Calemmo thus relied on nonprecedential and nonbinding case law. (*Id.*) However, while *Drinker* sets out many of the basic principles attaching to IEP implementation, the facts in *Drinker* are different from those here and, more importantly, the statutory landscape has since changed since *Drinker* was decided in 1996.

Factually, the *Drinker* parents fought against their school district's proposal to move their child to a neighboring district and sought instead to maintain the student's placement in their town's district. Here, Plaintiffs changed locations but sought to maintain the same schooling option for S.B. In *Drinker,* the district proposed unilateral changes to the implementation of the IEP. Here, Plaintiffs unilaterally transferred from one district to another, but demanded that the new district precisely follow the old district's IEP, though Howell believes it can offer comparable services in its schools and need not resort to an out-of-district private school.

The relevant statutory changes since *Drinker* were discussed by the Third Circuit in *Bryam*. Specifically, the *Byram* Court looked to § 1414(d)(2)(C)(i)(I), a provision added to the IDEA by Congress in 2004 and thus not a factor that could have been considered by the *Drinker* Court. In *Byram*, the Third Circuit held that, as Congress explicitly provided procedures for intrastate transfers in § 1414(d)(2)I(i)(I), "because [the student's] parents unilaterally relocated him . . . the stay-put provision is inoperative and Byram meets its obligation by complying with § 1414(d)(2)(C)(i)(I)." *Id.*

Against that statutory backdrop, the Third Circuit reiterated a principle initially proclaimed in *Radnor,* that in the context of transfers, "unilateral relocations by parents can override the [stay

put] provision." *Byram*, 629 F. App'x at 238 (citing *Michael C. v. Radnor Twp. Sch. Dist.*, 202 F.3d 642, 651 (3d Cir. 2000). ("[W]here a *parent* unilaterally removes a child from an existing placement determined in accordance with state procedures, and puts the child in a different placement that was not assigned through proper state procedures, the protections of the stay-put provision are inoperative until the state or local educational authorities and the parents agree on a new placement.")

As the Supreme Court stated in *Honig v. Doe*, the purpose of the "stay put" provision was "to strip *schools* of the unilateral authority they had traditionally employed to exclude disabled students, particularly emotionally disturbed students, from school." *Honig*, 108 S. Ct. 592, 604, 484 U.S. 305, 323–24 (1988) (emphasis added).

Under IDEA, in the context of intrastate transfers by a student's family, "the local educational agency shall provide such child with a free appropriate public education, including services comparable to those described in the previously held IEP, in consultation with the parents until such time as the local educational agency adopts the previously held IEP or develops, adopts, and implements a new IEP that is consistent with Federal and State law." § 1414(d)(2)(C)(i)(I).

The Third Circuit applied this provision in *Byram*, holding that "because [the student's] parents unilaterally relocated him from [one school district to another], the stay-put provision is inoperative and Byram meets its obligation by complying with § 1414(d)(2)(C)(i)(I)." *Id.* at 238.

In *Cinnaminson v. K.L.*, this Court stated that the "stay put" provision does not apply in every situation where a parent and school district dispute how to implement an IEP. *Cinnaminson v. K.L.*, No. 16-3586, 2016 WL 4212121, at *5 (citing *Radnor*, 202 F.3d at 651). The *Cinnaminson* Court recognized that while this means a student may not receive the "exact continuity" provided by the "stay put" provision, the "new school district is still required to provide the child with a

'free appropriate public education, including services comparable to those described in the previously held IEP,'" until a new IEP is agreed upon. (*Id.* (citing § 1414 (d)(2)(C)(i)).) The Court reasoned that the addition of the transfer provision to the IDEA "balances the goal of maintaining educational consistency for special needs students with the recognition that families have accepted some amount of discontinuity in their child's education when they voluntarily change school districts." *Id.*

Judge Calemmo rejected Plaintiffs' argument that continued attendance at SCHI was justified because they expressed their concerns to Howell that the placement was not individualized for S.B. and that their visit to Memorial Elementary convinced them that school was appropriate for S.B. Judge Calemmo cited *Cinnaminson v. K.L.* for the proposition that "even where parents are aggrieved . . . there is no automatic default remedy to the creation of a 'stay put' placement for a transfer student." (ECF No. 1-1 at 11 (citing *Cinnaminson*, No. 16-3586, 2016 WL 4212121 *5).)

In *Cinnaminson*, the parents argued the school district failed to adhere to New Jersey regulations governing how to implement IDEA's transfer provision, and that this failure required exact implementation of an existing IEP. The Court rejected this argument, holding that a breach of the New Jersey implementation regime "does not give the wronged party the leave to determine its own remedy without any basis in legislation or case law." *Id.* Rather, the Court stated, the regulation provides that the wronged party may "file a petition for emergent relief under New Jersey Administrative Code 6A:3-1.6, seeking the provision of appropriate services." *Id.*

This is not to say the "stay put" provision is always inapplicable in cases of unilateral transfers by parents. *Radnor* teaches that aggrieved transferring parents can "place the child in a private school, initiate a due process hearing, and seek reimbursement from educational authorities

later." *Radnor*, 202 F.3d at 651 (citing *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 15, 114 S. Ct. 361, 126 L.Ed.2d 284 (1993); *School Comm. of Town of Burlington, Mass. v. Department of Educ. of Commonwealth of Mass.*, 471 U.S. 359, 369–73, 105 S. Ct. 1996, 85 L.Ed.2d 385 (1985).) "Once an administrative ruling validates the parents' decision to move the child to a new placement, 'the move to private school is no longer the parents' unilateral action, and the child is entitled to 'stay put' at the private school for the duration of the dispute resolution proceedings." *Rena C. v. Colonial School District*, 890 F.3d 404, 416 (3d Cir. 2018).

However, those were not the facts before Judge Calemmo. Accordingly, Judge Calemmo's Final Decision that the "stay put" provision was not implicated when "S.B.'s parents made the unilateral decision to transfer their child midyear to a new school district that offered 'comparable services' to those described in [S.B.'s] very current IEP" is **AFFIRMED**.

### B. Reimbursement for SCHI

Howell argues Judge Calemmo's decision denying reimbursement to Plaintiffs for the cost of S.B.'s attendance at SCHI from 2016 should be affirmed because, having relocated to Howell and having failed to cooperate with Howell's staff over any placement other than SCHI, "Plaintiffs are not entitled to reimbursement for any costs or other relief associated with their placement of S.B. at SCHI." (ECF No. 20-2 at 17 (citing *Cinnaminson v. K.L.*, No. 16-3586, 2016 WL 4212121 *5 ("When a parent unilaterally moves a child to a new school district, the 'stay-put' provision is not applicable and a different section of the IDEA applies: 20 U.S.C. § 1414 (d)(2)(C)(i)") (citing *Byram*, 629 F. App'x at 238)).)

Plaintiffs counter that Judge Calemmo's decision should be reversed as to SCHI costs because "the 'stay put' provision applies to S.B., and it automatically follows that 'reimbursement for the costs of pendent placement in a private school' is an appropriate remedy." (ECF No. 27 at

8.) As the Court has ruled in Howell's favor above, it follows that Plaintiffs' claim for reimbursement under the IDEA also fails. *See Radnor*, 202 F.3d at 653–54.

The Supreme Court has upheld reimbursement of private-school tuition where parents paid for a disabled child's education because the public schools failed to provide FAPE. *D.F. v. Collingswood Borough Bd. of Educ.*, 694 F.3d 488, 496 (3d Cir. 2012) (citing *Sch. Comm. of Burlington v. Dep't of Educ.,* 471 U.S. 359, 370, 105 S. Ct. 1996 (1985)). However, the Supreme Court also recognized that "parents who unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local school officials, do so at their own financial risk." *Sch. Comm. of Burlington,* 471 U.S. at 373–74, 105 S. Ct. 1996. As the *Radnor* Court concluded, such parents "will recover only if they are correct that local authorities have failed to provide the educational program to which their child is entitled under the IDEA." *Radnor*, 202 F.3d at 651 (citing *Sch. Comm. of Burlington*, 471 U.S. at 373–74, 105 S. Ct. 1996.) Accordingly, the Court affirms Judge Calemmo's Final Decision denying SCHI reimbursement, and therefore Defendant's Motion for Summary Judgment is **GRANTED**.

## IV. CONCLUSION

For the reasons set forth above, the Court concludes Judge Calemmo's Final Decision denying Plaintiffs' claim that the "stay put" provision was applicable to the facts of this matter and denying, as a result, Plaintiffs' claim for reimbursement of costs for SCHI is **AFFIRMED**. Accordingly, Howell's Motion for Summary Judgment is **GRANTED.**


Date: March 20, 2020                    */s/ Brian R. Martinotti*
                                        **HON. BRIAN R. MARTINOTTI**
                                        **UNITED STATES DISTRICT JUDGE**